## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JEREMY MANCINI BATES, and ELAINA
HALL, Individually and on behalf of all
others similarly situated,

      Plaintiff,

      v.

VERIZON CONNECT FLEET USA LLC
And VERIZON CONNECT INC.

      Defendants.

_____.

Case No:

**CLASS ACTION**

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF NORTH CAROLINA AND ILLINOIS OVERTIME WAGE LAWS

Plaintiff, JEREMY MANCINI BATES and ELAINA HALL, individually, and on behalf of all others similarly situated sues Defendants, VERIZON CONNECT FLEET USA LLC. and VERIZON CONNECT INC. (f/k/a Fleetmatics USA, LLC) (hereinafter jointly referred to as "Verizon" and/or "Defendants") for , and pursuant to Rule 23 of the Fed Rules of Civ. Proc., seek class certification on behalf of all others similarly situated, and state as follows:

## INTRODUCTION

1.      The Defendants in this case have willfully FAILED to pay overtime wages to all Inside Sales Representatives (ISR) employees working under various job titles, some self-created, others created by the company such as:  Business Development Representative (BDR), Business Development Managers (BDM), Account Managers, Account Executives, Closers, Consultants, Fleet Managers, Development Managers, Associate Sales Partners or Sales Partners (aka Closers), Sales Specialists, and other interchangeable or related job titles, all of which are now or were at one time, used to identify employees working as non-exempt, hourly paid Inside Sales Representatives (ISR).  Generally, the BDR are lead generators and appointment settlers and the Closers/Sales Partners are the persons that consummate the sale.  All the members of the putative classes were paid on an hourly, non-exempt status with a bonus plan based upon achieving a percentage to goal.

2.      Historically, Defendants, by and in conjunction with Verizon Communications Inc. the parent company of Defendants,  purchased Fleetmatics USA, LLC for $2.4 billion dollars in 2016 to commence or gain access to the telematics industry and sell GPS tracking software and products focused on fleet management, mobile workforce solutions and IoT (Internet of Things).

3.     After the purchase, Verizon continued to operate the purchased Fleetmatics company and its assets without name change and continued to operate the company until on or about April 1, 2018, when the name was officially changed to Verizon Connect and employees were then paid directly by Verizon.

4.     Defendants operated its business from 5 offices:  1) San Diego, California;  2) Rolling Meadows, Illinois; 3) Charlotte, North Carolina; 4) Tampa, Florida; 5) Tempe, Arizona  (since Closed) sometime in 2019 or 2020, from where it employed similarly situated ISR, all working on similar compensation plans, performing similar if not identical job responsibilities, and all suffering from the same, common unlawful pay practices pursuant to a de facto policy and scheme to avoid overtime wages and save millions of dollars in labor costs.

5.     It is not a mere coincidence that Verizon continues to subject employees to the same unlawful pay practices that plagued Fleetmatics USA, LLC., and which resulted in a settlement on November 3, 2016, in the case of Gillard, Stramiello and Pate v. Fleetmatics USA LLC, Case no.  8:16-cv-00081, DE 70, in the sum of $2,102,250.00.  Thereafter, it was business as usual, and Defendants continued with a scheme to avoid paying overtime wages to all its ISR nationally, and thus save and steal millions of dollars of wages owed to 1000 or more employees, but instituting a De Facto policy against reporting more than 40

hours and also intentionally not putting in place an accurate and contimeproance time clock system.

6.     Ironicall, Defendants even WARN the public of the risks of not properly tracking the work hours of non-exempt employees in their own literature and marketing materials easily found on the web: https://www.verizonconnect.com/resources/article/software-improves-time-card-reporting/ "**Accurate, Efficient, Simplified Timecard Reporting**".

7.     Plaintiff herein commences this legal action against Defendants for willful violations of federal and state wage and hour overtime pay laws and related regulations on behalf of all similarly situated current and former employees of Defendants who worked anytime in the preceding three (3) years to the present and continuing.

8.     Defendants have been aware of the claims of Mancini Bates and all other similarly situated class members of the NC and Ill classes, including upwards of 170 present and former ISR working from these same two North Carolina and Illinois offices of Defendants the  FLSA national collective action lawsuit by ISR seeking recovery of unpaid overtime wages was filed on May 28, 2020, in the related case of ***Garnick, Romeo and Hanvey v. Verizon Connect Fleet USA LLC, Case No: 8:20-CV-01474-MSS-TGW*** , Middle District of Florida.

9.     Pursuant to a national, common policy and plan, Plaintiff and the classes of similarly situated current and former employees worked under company assigned or self created job titles, all used to describe the same inside sales position, including but not limited to the following: "Account Executive", "Business Development Representative", "Specialist", "Business Development Consultant", "National Account Manager", "Fleet Consultant", "Senior Business Developer", Business Coordinator", "Associate Sales Partner", "Sales Partner", "closer", and "Business Developer".  These titles are all used to describe persons working as Inside Sales Representatives, selling products and services on a non-retail basis to businesses and commercial enterprises.  Plaintiffs, and the classes of similarly situated employees, were unlawfully not compensated a premium for all hours worked over forty (40) in each and every workweek by a scheme and plan of Defendant to evade the overtime wage laws and save many millions of dollars in labor costs to the detriment and harm of Plaintiffs and all other Inside Sales Representatives.

10.     Indeed, just examining the complaint in Gillard, et. al. v. Fleetmatics USA LLC, Verizon, knew what had been going on, and had knowledge of this case at the time of the settlement with Fleetmatics USA, LLC., as clearly evident by the timing of the purchase of Fleetmatics USA, LLC. in the same calendar year.

Further the same officers, managers and executives who were witness and aware of the off the clock, unpaid overtime hours being incurred by ISR, along with the unlawful pay practices of Fleetmatics USA LLC, continued on with Verizon after the sale and were complicit in the continued willful violation of the state and federal overtime wage laws.

11.    However, after the purchase by Verizon, it was "business as usual", permitting Inside Sales Representatives to suffer to work off the clock and to work without being paid a premium for all hours worked at rates of time and one half their regular rates of pay.

12.    Just as Fleetmatics USA, LLC. failed, as required by the FLSA and respective state overtime wage laws to contemporaneously track and record the work hours of its employees, Defendant VERIZON maintained the same unlawful practices nationally, and intentionally.

13.    Defendants did not institute during the years 2017, to the present, any actual time tracking or recording system for the work hours of the Inside Sales Representatives, which could have helped minimize some of the problems here of off the clock work and automatic deductions of 1 hour per day for meal breaks never fully taken.

14.    While Defendants did have some system for hourly employees to report work hours, the Defendants still violated 29 CFR Part 516, and thus the respective state laws of NC and Ill.  Alternatively, even if later a court concludes the system used by Defendants satisfies 29 CFR Part 516 record keeping requirements, and the same for the NC and Ill. record keeping requirements, these time records are wholly inaccurate and unreliable as Defendants did not track and record the actual times employees started working, took breaks, and left for the day;  worse, and managers just entered work hours for and on behalf of ISR and were  complicit in the fraudulent time records activities of Defendants.

15.    Defendants absolutely knew and knows today that Inside Sales Representatives routinely worked overtime hours off the clock and by working through meal breaks, as managers and supervisors witnessed the extra hours, encouraged and even pressured Inside Sales Representatives to work as many hours as possible to hit quotas and meet goals.

16.    Moreover, Defendants never asked employees to leave after the shift ended, never prohibited them from working prior to the shift time, and witnessed and knew that employees, including Plaintiffs, routinely worked through some or all of the (1) one hour provided meal break as to which Defendant took an automatic  one (1) hour deduction from the total work hours each day, regardless of

whether Inside Sales Representatives took such uninterrupted meal breaks of 20 minutes or simply worked throughout the entire meal break time.

17.    Defendants simply turned a "blind eye" to all of the off the clock work for numerous reasons, while pressuring, coercing, intimidating and encouraging Inside Sales Representatives to work as many hours as necessary to hit their quotas, metrics and production goals.

18.    Defendants also engaged in a scheme to avoid paying overtime wages by misleading employees with false information and false statements about the overtime laws and their entitlement, and intentionally by actions and omissions of facts and law in representations and communications, led closers to believe they were not entitled to overtime premiums.

19.    The general de Facto policy for all ISR was to not report more than 8 hours per day and no more than 40 hours per week on time sheets even when management knew and should have known IRS were working more than 40 hours routinely.

20.    Defendants have willfully failed to pay Plaintiff, and all similarly situated persons, in accordance with the Illinois and North Carolina overtime wage laws.  Specifically, Plaintiffs, and similarly situated employees, were not paid time

and a half of their regular rate pay for all hours worked in excess of forty (40) hours per week, nor paid a premium for all overtime hours worked.

21.    Plaintiff, and the class of similarly situated employees, did not and currently do not perform work that meets the definition of any exemption under the FLSA or the NC and Ill wage laws, and the Defendants' pay practices are not only clearly unlawful, but UNFAIR as well.

22.    In this pleading, the term "Inside Sales Representative" means any employee of Defendant working under the various titles of: "Account Executive", Business Development Representative" (BDR), "Closer", "Associate Sales Partner", "Sales Partner", "Specialist", Business Development Consultant", National Account Manager, Regional Account Executive, Fleet Manager, Senior Business Developer, Business Developer, Business Coordinator, Specialist Solutions Consultant or any other title or position, where employees perform substantially the same work as an ISR (discovery may reveal additional job titles and employees that should be included). Inside Sales Representatives (ISR) in this class make inbound and/or outbound phone calls (cold calls), research the internet and either make internet presentations or demonstrations or schedule this for others such as Closers to finalize and consummate the sales.

23.     In this pleading, "Defendants" means the named Defendants and any other subsidiary or affiliated and wholly owned corporation, organization or entity responsible for the employment practices complained of herein (discovery may reveal additional defendants that should be included).

24.     The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.  Plaintiffs reserve all rights to plead in the alternative.

25.     The state overtime wage laws of North Carolina, Illinois are modeled after and largely follow the FLSA and DOL regulations related to overtime pay.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this action pursuant to diversity 28 U.S. Code § 1332 because this action involves citizens of different states (North Carolina and Illinois) and Defendants are Delaware Corporation, with principal place of business in this district, located in Fulton County, Georgia.  In addition, the damages at issue exceed the sum of $75,000.00.

27.     This Court alternatively or in addition has subject matter jurisdiction over this action pursuant to The U.S. Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715.

28.    This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

29.    This Court has personal jurisdiction over this action because the Defendant continuously conducts substantial business in Alpharetta, Fulton County, Georgia from where Defendants' principal place of business is located at 5055 North Point Parkway, Alpharetta, GA 30022.

30.    Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because the Defendants' principal place of business is in this district and where it governs, instituted, enforced and controls the policies and pay practices at issue in this case.

31.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.  The state law claims here are essentially identical, but for one or more differences in remedies available to the Plaintiff, such that  the wage claims of the Plaintiff, and the class or classes of similarly situated arise out of the same common nucleus of operative facts such that they form part of the same case or controversy.

## **THE PARTIES**

32.    Plaintiff Elaina Hall was at all times material an employee of Defendant working from the Charlotte, North Carolina office as a BDR during the

period of 2013 until approximately June 2019.  Hall is an employee pursuant to the North Carolina wage laws, and entitled to be paid premiums for all overtime hours worked.

33.    Plaintiff Jeremy Mancini Bates at all times material was an employee of Defendant working as a BDR from the Defendants' Rolling Meadows, Ill. office during the period of approximately August 2018 until August 2020.  Mancini Bates was also a covered employee as defined by the Illinois state wage laws.

34.    In April 2018, Defendants commenced paying its ISR under the Verizon Connect company name, whereas prior to this date, all ISR were paid by the former Fleetmatics USA company or Companies.

## DEFENDANTS, VERIZON CONNECT FLEET USA LLC AND VERIZON CONNECT INC.

35.    Defendant, VERIZON CONNECT FLEET USA LLC. (hereinafter "Defendant" and/or "Verizon"), is a Foreign Limited Liability Corporation, and a wholly owned subsidiary of VERIZON COMMUNICATIONS INC., a publicly traded corporation on the NYSE under the symbol VZ, and has a principal place of business located at 15055 North Point Parkway, Alpharetta, GA 30022, and at all times material hereto, has routinely and consistently conducted business in the State of GEORGIA, as well as the states of North Carolina and Illinois.

Defendant may be served through its Registered Agent for service of process, CT Corporation System, at **289 S Culver St, Lawrenceville, GA, 30046-4805, USA** and/or its physical offices in Alpharetta, Georgia.

36.    Defendant, VERIZON CONNECT INC. (hereinafter "Defendant" and/or "Verizon"), is a Foreign Limited Liability Corporation, and a wholly owned subsidiary of VERIZON COMMUNICATIONS INC., a publicly traded corporation on the NYSE under the symbol VZ, and has a principal place of business located at 15055 North Point Parkway, Alpharetta, GA 30022, and at all times material hereto, has routinely and consistently conducted business in the State of GEORGIA, as well as the states of North Carolina and Illinois. Defendant may be served through its Registered Agent for service of process, CT Corporation System, at **289 S Culver St, Lawrenceville, GA, 30046-4805, USA** and/or its physical offices in Alpharetta, Georgia.

37.    Upon information and belief both Defendants are joint employers of the Plaintiffs, who directed the work of the Plaintiffs, and who jointly created, enforced and were responsible for the oversight of all ISR at issue in this case.

38.    As stated by Defendants on their Verizon website, Defendants are a company which offers: "Guiding a connected world on the go by automating,

optimizing and revolutionizing the way people, vehicles and things move through the world".

39.     Defendants have or had eight (8) offices in the US, including: Chicago, Atlanta, Charlotte, Waltham, Boston, Irvine, San Diego, and Temple Terrace, along with one (1) office in Toronto from where ISR worked.  Defendants also employed similarly situated ISR in other geographic locations.

40.     Defendants are jointly and individually an employer within the definition of the FLSA and the respective NC and Ill wage laws; Defendants had revenues exceeding $500,000 annually in all applicable time periods, and are or were involved in interstate commerce.

41.     Similarly, Defendants at all times material were and are an employer within the definition of the respective state wage and hour laws of the states of California, North Carolina and Illinois.

42.     Defendants provide fleet operators (companies or businesses with numerous vehicles) with an internet based system that enhances workforce productivity through real time vehicle tracking, route optimization, job dispatch, and fuel usage monitoring.

43.     Defendants are a direct competitor of Fleetcor, d/b/a "NexTraq" and both companies serve the same commercial fleet clients with telematics solutions, GPS and tracking.

44.     Competitors who also employ similar ISR such as Fleetcor and NEXTRAQ, have been caught numerous times stealing wages, and violating the FLSA for inside sales representatives through numerous unlawful pay practices, and when factoring in the Gillard et al v. Fleetmatics case settlement for ISR, it is unlikely that Defendant Verizon has not already had more than enough reasons to have been aware of the unlawful pay practices complained of herein and continued to act with reckless disregard for the Illinois and North Carolina overtime wage laws, if not willfully continuing to violate the the overtime wage laws.

45.     Thus, Defendants had a duty to have investigated, studied, audited, and assessed its pay practices and its federal and state law duties and obligations and determine if it was in compliance; and the failure to have done so subjects the Defendants to payment of liquidated damages under NC law for all similarly situated North Carolina class members, and treble damages for Mancini Bates, and the Illinois class members.

46.     Further, as Defendants' unlawful pay practices complained of herein are and were willful violations of the respective wage laws of NC and ILL, a three

(3) year statute of limitations applies and Plaintiff seek damages for 3 years preceding the filing of this case individually and for all class members.

## FACTUAL AND CLASS ACTION ALLEGATIONS

47.     This multi-class action lawsuit arises from a longstanding and continuing wrongful scheme by Defendants to: a) willfully fail to accurately and properly track and record the work hours of ISR, and b) willfully refuse to pay overtime wages to a large class of Inside Sales Representatives who Defendant knows or should have known, were working off the clock and working overtime hours without being paid for all such hours.

48.     Plaintiffs brings this suit individually, and on behalf of all similarly situated persons composed of the following CLASS or CLASSES:

**SINGLE CLASS OF ALL NORTH CAROLINA ND ILLINOIS ISR**

> **All employees working as Inside Sales Representatives under the titles of: Account Executive, Account Manager, Consultant, Business Development Representative, Closer, Associate Sales Partner, Sales Partner, Sales Representative, team leader, pod leader, or any other job titles used to describe non-exempt, inside sales positions, who are currently employed by or were previously employed with Fleetmatics USA, LLC or Verizon Connect Fleet USA LLC working from or reporting remotely to the Rolling Meadows, Illinois office, OR Charlotte, NC office within the 3 three years preceding the filing of this lawsuit to the present.**

**\*\*Plaintiff may alternatively seek class certification of 2 individual state classes, but Plaintiff expects Defendants to agree that all are similarly situated such that a single class should apply.**

**ALTERNATIVELY:**

**CLASS A: THE NORTH CAROLINA CLASS**

> **All employees working as Inside Sales Representatives under the titles of: Account Executive, Account Manager, Consultant, Business Development Representative, Closer, Associate Sales Partner, Sales Partner, Sales Representative, team leader, pod leader, or any other job titles used to describe non-exempt, inside sales positions, who are currently employed by or were previously employed with Fleetmatics USA, LLC or Verizon Connect Fleet USA LLC working from in person or reporting remotely to the Charlotte, North Carolina office within the three (3) years preceding the filing of this lawsuit to the present.**

**CLASS B: THE ILLINOIS CLASS Illinois Minimum Wage Law**

> **All employees working as Inside Sales Representatives under the titles of: Account Executive, Account Manager, Consultant, Business Development Representative, Closer, Associate Sales Partner, Sales Partner, Sales Representative, team leader, pod leader, or any other job titles used to describe non-exempt, inside sales positions, who are currently employed by or were previously employed with Fleetmatics USA, LLC or Verizon Connect Fleet USA LLC working from in person or reporting to remotely from the Rolling Meadows, Illinois office within the 3 three years preceding the filing of this lawsuit to the present.**

49.    Plaintiffs are able to protect and represent the putative Class or Classes, and they are willing and able, and consent to doing so.  Plaintiff Mancini Bates also worked in Defendant's Rolling Meadows office and is familiar with the

pay practices, company policies and procedures going back to when the company was known as Fleetmatics.

50.     Plaintiff Hall worked in Defendant's Charlotte, NC office and is familiar with the pay practices, company policies and procedures going back to when the company was known as Fleetmatics.

51.     Further in the ***Garnick*** case, the Court has issued an Order finding that all ISR the ISR working for all the Defendants' offices were similarly situated and properly maintained as a single class in that national FLSA collective action, such that a single class represented by Hall and Mancini Bates is proper here.

52.     Plaintiff Hall can adequately represent the interests of the North Carolina Class or a single class of all North Carolina and Illinois ISR.

53.     Plaintiffs routinely worked more than forty (40) hours in workweeks throughout his term of their employment with Defendant, and upwards of 40 other present and former ISR (including sales partners/closers and BDR) working from these same offices likewise in the related ***Garnick, Romeo and Hanvey v. Verizon Connect Fleet USA LLC, Case No: 8:20-CV-01474-MSS-TGW*** , Middle District of Florida case, have asserted and claimed to have worked overtime hours without being paid premiums or any pay for all hours worked during the same relevant 3 year period.

54.     Plaintiffs and all others similarly situated routinely worked 9 hour days, Monday to Friday and a standard minimum 45 hour workweek with Defendants, who took from all ISR an automatic 10 hour dedication for meal breaks, regardless of whether ISR took some or none of the 1 hour meal breaks.

55.     Each day, the company has a standardized one (1) hour lunch break, typically between 12 pm to 1:00 pm in Charlotte, and similar in the Rolling Meadows office where all BDR and Closers are expected and required to use this set one (1) hour time for a meal break or just for break time, without deviation.

56.     Thus for each nine (9) hour work day scheduled and assigned by Defendant, the company automatically deducts one (1) hour of pay for each day for this break and informs BDR, Closers and other Inside Sales Representatives to claim and report ONLY eight (8) hours in total if they worked the full shift of nine (9) hours, regardless of whether Plaintiff or any other sales employee took 5 minutes of uninterrupted meal break, 10 minutes, or no uninterrupted break at all.

57.     In the Arizona office (now closed), the Charlotte office (now closed and ISR working solely remotely as of June 2020), and the Tampa office, ISR, including Plaintiffs, routinely worked through meal breaks, sitting at their desks and working while eating, or just working through the one (1) hour allotted time in

order to attempt to meet sales goals and quotas, all of which was known to management.

58.     Plaintiffs allege for themselves, and on behalf of the putative class or classes that they are entitled to unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by the overtime laws of the states of North Carolina and Illinois including for all meal break times they worked through without pay.

59.     Defendants employ, upon information and belief and investigation, an estimated 350 or more Inside Sales Representatives working from numerous offices, including: Atlanta, Georgia; Boston, Massachusetts; Temple Terrace, Florida; Chicago Illinois; Charlotte, North Carolina; San Diego, California; Irvine, California; and Toronto, Canada.

60.     From receipt of records from Defendant in the ***Garnick et al v Verizon Connect FLSA*** national collective action lawsuit, it was determined there are 212 ISRs who worked in Illinois and 171 ISR, for a total of 393 class members at issue in this case.

61.     Upon information and belief, the Inside Sales Representatives in all offices working under the various titles, are all paid under a common pay or compensation plan of a base pay and a percentage to goal bonus structure.

62.     All BDR, Closers and all other Inside Sales Representatives under the various job titles also perform their job duties in a uniform, similar manner; and all are supervised and managed according to the same national standards and uniform policies and procedures set by the Defendants and applicable to all offices.

63.     All Inside Sales Representatives within this putative class here were treated and classified by Defendants as either hourly, nonexempt employees or salaried, non-exempt employees.

64.     All Inside Sales Representatives were purposefully misled by Defendants to believe it was, and is, lawful to take one (1) hour off of the forty-five (45) hour work schedule for a mandatory meal break deduction without regard or concern as to whether the employees ever took the full one hour break or worked through the allotted one (1) hour meal breaks.

65.     Said differently, Defendants failed to provide any mechanism and real opportunity for Plaintiffs and all others Inside Sales Representatives to claim the times they worked through the one (1) hour meal breaks or to log in and out for breaks.

66.     The actual work hours of all the Inside Sales Representatives were never recorded by the Defendants.  Instead, they instructed employees one time, every two weeks, to simply put on the payroll database or website, eight (8) hours

for each full day worked, and forty (40) hours for each week, unless they missed a day.

67.     The company time reporting system as well is pre-populated with a total of eight (8) hours for each day and forty (40) hours for each workweek, and no boxes or lines to put in break times started or ended, nor any place to log in the actual times they started working each day or ceased working at the end of the day.

68.     Moreover, all Inside Sales Representatives were routinely advised subsequent to their acceptance of the offer to work for the Defendants, that the sales positions are "not 9 to 5" (40 hours per week) jobs.

69.     The Defendants maintain a company-wide policy throughout the relevant three (3) year class period of willfully refusing to pay overtime wages for all overtime hours worked for Inside Sales Representatives despite clear knowledge Inside Sales Representatives have worked and continue to work overtime hours which  are unreported and off the clock.

70.     As per the company pay stubs and electronically submitted timesheets, it's generally, typically and almost always just going to say forty (40) hours worked each week and eighty (80) hours for the two (2) week period.

71.     Upon information and belief, all Inside Sales Representatives are supervised by Directors and other managers, who very closely monitor

performance, scrutinize sales representatives and their performance metrics, such as phone calls and production, and report results to the corporate office under a structured, corporate controlled manner.  Defendants also micro-managed all Inside Sales Representatives under daily and weekly scrutiny of the performance.

72.    All Inside Sales Representatives handling outbound calls, primarily those with titles of BDR are expected to make a certain number of daily phone calls, and have sales goals or quotas for appointments for demonstrations of the telematics GPS tracking products and services with businesses set up for the Closers, which if not met, subject them to disciplinary action, including termination of their employment.

73.    All Closers similarly have sales goals and quotas related to the number of appointments/demonstrations held and sales.  The Closers' primary job duty is to sell the GPS tracking units, attend appointments set by the Business Development Representatives with businesses, and demonstrate the products over the internet.

74.    Defendants also created and maintained a De Facto policy that ISR should not report more than 40 hours, or overtime hours, on the time sheets unless pre-authorized, but all ISR should work as many overtime hours as needed or

required off the clock and "on their own dime" to meet quotas, metrics and sales goals and thus keep their jobs.

75.     Some Inside Sales Representatives call upon potential new clients or customers, and others, upon information and belief, from Defendants' job descriptions, are assigned a group of current customers or clients to call.  In all cases, the primary job duties of all Inside Sales Representatives are to sell and the sales take place generally over the telephone and internet to other businesses, generally known as B2B sales.

76.     The overtime wage provisions set forth in the Illinois and North Carolina wage laws apply to Defendants, as they engage in interstate commerce. Indeed, at all relevant times, Defendants engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA Sec. 203.

77.     The actual job duties performed by the proposed putative class or classes of Inside Sales Representatives do not satisfy the elements of any exemptions within FLSA §213, NC or Ill state laws, as all perform routine jobs whose primary job duty was production, setting appointments for others to attempt to sell GPS tracking products or other products or services, or actually attending the appointments and making the sales pitches and demonstrations of the products and services.

78.     Plaintiffs, as well as the members of the putative classes of similarly situated persons routinely worked through part or all of their lunch breaks, worked prior to or after the set and standardized nine (9) hour daily shift times, and also performed other work incidental to their job duties by working at home or outside the office making or receiving phones calls, sending or receiving and reading emails without being paid for all these additional work hours.

79.     Plaintiffs routinely engaged in making or receiving telephone calls, reading or sending emails after business hours and on weekends, as to which Defendants did not provide any guidance or opportunity to submit or claim these additional work hours.

80.     Many sales calls and demonstrations had to take place in the evening hours lasting after the ending shift time to accommodate business owners and their officers so as not to disrupt their business during standard daily working hours.

81.     Plaintiff MAncini Bates routinely commenced working prior to the scheduled shift times of 7:30 am until 4:30 pm and stayed after to perform work as did other ISR working alongside Plaintiff.

82.     Plaintiff Hall routinely commenced working prior to the scheduled shift times of 8:00 am until 5:00 pm and stayed after to perform work as did other ISR working alongside Plaintiff.

83.     Pursuant to the Illinois and NC wage laws, Defendants, as the employer of Plaintiff and other similarly situated ISR, was and is required to pay one and one-half times each employee's hourly rate for hours worked in excess of forty (40) hours per week.

84.     Defendants are fully aware that employees who work through lunches come in early and stay late, as management can clearly see them doing so and encourage employees to do so and take advantage of the additional time to meet production goals and quotes.

85.     Defendants were also fully aware that the nature of the position required and did involve BDM/BDR making and receiving telephone calls and sending and receiving emails outside the office, and at times accessing the CRM salesforce system/programs.

86.     Defendants also required a mandatory number of phone calls or dials, demonstrations and talk times and appointments set, all of which produced a very stressful, boiler room type environment and which combined with the threats of discipline and termination of employment for not meeting production goals and requirements, fostered the off the clock work by BDM/BDR and other ISR.

87.     Upon information and belief, all of the top performing Inside Sales Representatives routinely worked overtime and extra hours and there is a known

direct correlation between the number of hours worked and the production and productivity of the sales employees; Defendants encouraged ISR to work off the clock overtime hours.

88.     Defendants however, maintained a De Facto policy against ISR reporting overtime hours, or complaining about not being paid for all overtime hours worked each day and each week under fear and threat of scrutiny being brought upon them for incurring overtime hours.

89.     Defendants even suggested to ISR that all overtime had to be "preapproved" by several levels of management, and thus, to many it was futile to even ask if they were not already meeting and exceeding goals and quotas. Defendant's policy was circular, and the proverbial chicken and egg type game of do not claim or seek to claim overtime without approval and without having met or exceeded goals and quotas.

90.     Thus, even when Plaintiffs did have an opportunity to claim and report overtime hours, from fear of reprisal, he limited the hours reported, even though he routinely worked through breaks, coming in early, doing work outside the office.

91.    Similarly, one or more managers in Charlotte likewise simply input 80 hours of work for each bi weekly period for BDR and sales partners or closers knowing the time records were inaccurate, understated and falsified.

92.    In NC, Hall and other ISR would just at the last friday of the bi-weekly work period, just fill in 8 hours per day and 40 for each week, without regard to actual and accurate work times, such actions which were directed, ratified and permitted by Defendants such that Defendants knew the imte records were inaccurate and unreliable.

93.    The Company maintained a code of silence when it came to the issue of overtime hours and overtime wages, with literally no meetings or discussions about the time tracking requirements of the FLSA and state wage laws, or how to submit and claim overtime hours worked both inside and outside the office, including the 1 hour meal breaks.

94.    Defendants maintained a culture and environment of discouraging and intimidating ISR from submitting, or reporting overtime hours worked because if they were not the top producers or meeting all quotas and goals, they would be subjected to a high level of scrutiny and face the ire of management.

95.     Defendant does not presently, and has not throughout the relevant three (3) year class period,   properly clocked, tracked or recorded the actual working hours of each Inside Sales Representative in all of their offices.

96.     Defendants at times commanded and made it mandatory for Inside Sales Representatives to come in prior to their scheduled shift time, stay later, or at other times, work weekends or from home in some capacity.

97.     Defendants strongly encouraged and pressured Inside Sales Representatives to work overtime hours from home or to come in early or stay late.

98.     In order to meet sales quotas and maximize their commission and bonus, Plaintiffs and other Inside Sales Representatives would routinely work as many overtime hours as they wished with the full knowledge, approval and encouragement of sales Managers/Directors and officers of the Defendants.

99.     Inside Sales Representatives were warned when falling short of quotas that their jobs could be terminated and encouraged to work as many hours as necessary and possible to hit goals and quotas; thus overtime hours increased towards the end of the month by many BDR.

100.   Plaintiffs, and the class of similarly situated, like other Inside Sales Representatives, questioned the Defendants about not being paid overtime wages for ALL the overtime hours worked, and Defendants' managers would warn Inside

Sales Representatives that if they did not like the pay practices, they could leave and have a bad reference.

101.   Other inquiries by employees questioning the failure to pay overtime wages were given intentionally false communications that the company would investigate and look into it, but never justifying the exemption, or simply state that they are paid "salaried" employees such that they do not have a right to overtime or premium pay.

102.   All Inside Sales Representatives followed corporate policies and procedures applicable to all their offices where Inside Sales Representatives worked.

103.   All Inside Sales Representatives were trained to perform their job duties and expected to perform their job duties in similar manners throughout their multiple offices.

104.   All Inside Sales Representatives attended sales meetings during which the Defendants went over new procedures, policies and sales protocols and was clear to Plaintiffs, applied to all Inside Sales Representatives employed by the Defendant.

105.   Defendants should be well aware that the FLSA, and respective state wage laws of North Carolina and Illinois require the regular rate of pay calculation

to include not only the base salary, but the bonuses and commissions in the calculation; thus the overtime rates of the Plaintiffs' class must be based upon not just the base salary, but the commissions and bonuses as well.  *See* CFR 551.511. Therefore, if an employee's base wages are $35,000, and he or she earned $1,000 in the month while working overtime, the regular rate of pay is based upon $36,000 for the month.

106.   Defendants were aware that ISR, including BDR and Closers were working off the clock, working more hours than reported, including coming in early, working though allotted meal breaks and staying late.

107.   Moreover, Defendants were keenly aware that from the prior FLSA lawsuit it settled that it had a history of permitting ISR to suffer to work off the clock and without being paid premiums for all overtime hours worked.

108.   The Rule 23 Classes are so numerous that joinder of all Rule 23 Class members in this case would be impractical and satisfies the numerosity requirement of Rule 23.   There are approximately 393 class members in the Rule 23 Class, or two classes:  212 ISRs who worked in Illinois and 171 ISRs who worked in North Carolina.

109.   The wage laws of NC and ILL are both modeled after and by statute follow the FLSA and related cases such that if Defendants are found to have

violated the Ill overtime wage laws or the NC overtime wage laws, the other law would presumably have been violated and vice versa.

110.   There is a well-defined community of interest among Rule 23 North Carolina Class and the Illinois Class (or in a single Rule 23 class for both states) class members, and common questions of law and fact predominate in this action over any questions affecting individual members of the two individual or single class or ISR working from Carolina or Illinois.  These common legal and factual questions include, but are not limited to, the following:

   a. Whether Plaintiffs and the Rule 23 classes of similarly situated were not compensated at a rate of one-and-one-half times their regular hourly rate for all hours worked in excess of 40 in any workweek pursuant to North Carolina state wage and hour laws or Illinois State wage laws in the preceding 3 years;

   b. Whether the time spent by Plaintiff sand the Rule 23 Classes performed off-the-clock work tasks is compensable under North Carolina or Illinois state wage and hour laws; and

   c. Whether the Plaintiffs in were willfully permitted to suffer to work off the clock and pursuant to a De Facto policy against reporting overtime hours in violation of the state overtime wage laws;

d.  Whether the Defendants had actual or constructive knowledge of the off the clock work and whether Defendants willfully permitted and encouraged ISR wot work off the clock;

e.  Whether Defendants actions were willful such that a 3 year SOL should apply to the wage claims of the Plaintiffs and all class members;

f.  Whether Defendants time records are inaccurate, falsified and fraudulent such that they should be excluded from use in any court proceeding and violate the record keeping requirements of the NC and Illinois state wage laws;

g.  Whether defendants can demonstrate and proof any good faith defense to the presumption of awarding liquidated and treble damages for violations of the respective wage laws of NC and ILL;

h.  Whether Defendants should be enjoined from continued violations of the overtime laws of Illinois and North Carolina;

i.  And the proper measure of damages sustained by Plaintiffs and the Rule 23 Classes.

111.  Plaintiff Mancini Bates' claims are typical of those of the Rule 23 Classes in that they and all other Rule 23 Class members suffered underpayment of

overtime wages for off the clock work as a direct and proximate result of Defendants' common and systemic unlawful pay practices and company policies.

112.   Plaintiff Hall's claims are identical to Mancini Bates claims, the same as the 170 total party Plaintiffs in the GARNICK FLSA collective action case, and both Mancini Bates and Hall like all the ISR in the respective class or classes were hourly, non-exempt employees who should have been paid time and one half their regulate rates of pay for all hours over 40 in each and every work week.

113.   Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Class members.

114.   Plaintiffs Mancini Bates and Hall will fully and adequately protect the interests of the Rule 23 Class or classes and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions, including numerous cases in this District.   Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

115.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, inter alia, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own

given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.   Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

116.   This case will be manageable with either a single Rule 23 Class action, or in 2 classes by the respective states.   Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease in a single action.

117.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. See <u>Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

118.   Because Defendants acted and refused to act on grounds that apply generally to the the single Rule 23 Class and equally to the 2 state law classes, and declaratory relief is appropriate in this case with respect to the Rule 23 Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

119.   Defendants have acted on grounds that apply generally to the Illinois and NC classes or the single combined class in that it has common policies and practices of: (a) refusing to pay overtime compensation for all hours worked and permitting class members to suffer to work off the clock; (b) failing to maintain and provide accurate itemized wage statements to all members of the Class; (c) failing to provide a 30 minute or more uninterrupted and bona fide duty free breaks each day.   Accordingly, injunctive and declaratory relief is appropriate for the Class(es) as a whole.

120.   Class treatment is superior to alternative methods to adjudicate this dispute because the claims of Plaintiffs Mancini Bates, Hall and the similarly situated Class members suffered similar treatment and harm as a result of systematic policies and practices, including unlawful pay practices such as permitting them to suffer to work off the clock and suffering unpaid meal breaks, and because absent a class action, Defendants' unlawful conduct will likely continue un-remedied and unabated given that the damages suffered by individual class members are small compared to the expense and burden of individual litigation.

121.   Furthermore, Class certification is also superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent

judgments about Defendants' practices and as demonstrated by the pending *GARNICK* FLSA national collective action case, and the subsequent and recently filed Rule 23 class action in California styled *Santillan v. Verizon Connect Inc,* 3:21-cv-01257-H-KSC, SDCA, filed in July 2021.   More class members who become aware of actions to hold the Defendants accountable for their unlawful pay practices would likely follow now that "the cat is out of the bag" since Notice went out to nearly 900 ISR including all the NC and ILL class members in September 2021 about the claims for overtime wages.

### COUNT I
### FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED IN VIOLATIONS OF THE FLSA AND WAGE LAWS OF NORTH CAROLINA AND ILLINOIS

122.   Plaintiffs adopt and reallege paragraphs one through 121 as if fully set forth herein.

123.   Evidence reflecting the precise number of overtime hours worked by Plaintiffs and every member of the Class or classes, as well as the applicable compensation rates, is in the possession of Defendants.

124.    However, and to the extent records are unavailable, Plaintiff, and members of the Class, may establish the hours they worked solely by their

testimony and the burden of overcoming such testimony shifts to the employer. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

125.   All employers subject to the NC and ILL wage laws must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

126.   With respect to an employee subject to the Ill and NC wage laws, the following records must be kept:

a.   Personal information, including employee's name, home address, occupation, sex, and birth date if under nineteen (19) years of age;

b.   Hour and day when work week begins;

c.   Regular hourly pay rate for any week when overtime is worked;

d.   Total hours worked each workday and each workweek;

e.   Total daily or weekly straight-time earnings;

f.   Total overtime pay for the workweek;

g.   Deductions from or additions to wages;

h.   Total wages paid each pay period; and

i.   Date of payment and pay period covered

127.   Failure to comply with the recordkeeping requirements is a violation of the Ill and NC wage laws for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist.  *See,* 29 U.S.C. § 215(a)(5); *Also See,* Dunlop v. Gray-Goto, Inc., 528 F.2d 792 (10th Cir. 1976).

128.   Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the Act.  An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked.  *See,* Wirtz v. First State Abstract Ins. Co., 362 F.2d 83 (8th Cir. 1966); Boekemeier v. Fourth Universalist Soc'y, 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

129.   An employer's failure to maintain records may create a presumption in the aggrieved employee's favor.  *See,* Myers v. The Copper Cellar Corp., 192 F.3d 546, 551 n.9 (7th Cir. 1999), *citing* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

130.   Defendants have failed to accurately and contemporaneously record, track and report the Plaintiffs' and Class of similarly situated members time and work hours as required under the respective NC and ILL wage laws.

131.   Defendants have failed to make, keep and preserve records, with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of NC and ILL respective wage laws.

132.   Defendants did not require or even provide a means for ISR to clock in and out for the meal breaks, and just did not care if they worked through some or all of the meal breaks or took the whole meal break as they automatically deducted 1 hour from their pay each day for this break time, and knew their time records thus contained false information.

133.   Defendants also with actual and constructive knowledge encouraged and permitted ISR to suffer to work off the clock, and submit inaccurate time records directly with the assistance, directive and sometimes complete handling by managers.

## COUNT II
### CLAIMS BY ALL PARTY PLAINTIFFS FROM NORTH CAROLINA INDIVIDUALLY AND AS CLASS ACTION FOR VIOLATIONS OF NORTH CAROLINA WAGE AND HOUR ACT N.C.G.S. §§ 95-25.1, et seq.

134.   Plaintiffs Hall and Mancini Bates, individually and on behalf of all others similarly situated reallege and reincorporate all allegations contained in Paragraphs 1–121 as if incorporated herein.

135.   At all times relevant to the action, Defendants were an employer covered by the overtime mandates of the North Carolina Wage and Hour Act ("NCWHA"), N.C.G.S. §§ 95-25.1, et seq., and Plaintiff and the Rule 23 North Carolina Class are employees entitled to the NCWHA's protections.

136.   Plaintiff Hall at all times material was similarly situated to the members of the class she seeks to represent.

137.   The NCWHA entitles employees to compensation for every hour worked in a workweek. See N.C.G.S. § 95-25.3.

138.   The NCWHA entitles employees to overtime compensation "not less than time and one-half of the regular rate of pay of the employee for those hours in excess of 40 hours per week." See N.C.G.S. § 95-25.4.

139.   Defendants violated the NCWHA by regularly and repeatedly failing to compensate the ISR putative class members of North Carolina for all overtime hours worked, meaning all hours more than 40 in any work week.

140.   The foregoing conduct, as alleged, violates North Carolina G.S. 95-25.1 et seq., and any relevant rules adopted by the North Carolina Administrative Code, Title 13, Chapter 12 (collectively, "North Carolina Wage Laws").

141.   At all relevant times, Defendants have been, and continue to be, "employers" within the meaning of the North Carolina Wage Laws. At all relevant times, Defendant employed "employee[s]," including each of the members of the North Carolina Class, within the meaning of the North Carolina Wage Laws.

142.   The North Carolina Wage Laws require an employer, such as Defendant, to pay all compensation due to employees on their regular paydays. N.C.G.C. § 95-25.6.

143.   At all relevant times, Defendants had a policy and practice of failing and refusing to pay overtime pay to the North Carolina Class members for their hours worked in excess of forty hours per workweek.

144.   Defendants violated North Carolina Wage Laws including, but not necessarily limited to, North Carolina G.S. 95-25.6, by failing to pay the North Carolina Class members overtime for work performed in excess of forty hours in a workweek and hence, failing to pay all wages accrued to these workers on their regular scheduled paydays.

145.   As a result of Defendants' failure to record, report, credit, and furnish to each member of the North Carolina Class their respective wage and hour records showing all wages earned and due for all work performed, Defendants

failed to make, keep, preserve, and furnish such records in violation of North Carolina G.S. 95-25.15.

146.   The members of the single class or North Carolina Class also are entitled to an award of their attorneys' fees, costs, and expenses of this action to be paid by Defendants.

147.   Hall seeks individually and on behalf of all class members, damages in the amount of the respective unpaid overtime hours declared owed or awarded by this court at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, plus all available liquidated and other damages available under the North Carolina Wage laws.

148.   As a result, Plaintiffs and the Rule 23 Class members who worked from the North Carolina office have and will continue to suffer loss of income and other damages. Accordingly, Hall and all North Carolina class members are entitled to recover unpaid wages owed, including an equal sum as liquidated damages, plus costs and attorneys' fees, and other appropriate relief under the NCWHA at an amount to be proven at trial. See N.C.G.S. § 95-25.22.

## COUNT III
## INDIVIDUAL ILLINOIS PARTY PLAINTIFFS CLAIMS AND CLASS ACTION CLAIM FOR VIOLATION OF ILLINOIS STATE OVERTIME WAGE LAW Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, et seq.

149.   Plaintiff Mancini Bates, and all other class members who worked from or reported to the Rolling Meadows, Illinois office, individually, reallege and reincorporate all allegations contained in Paragraphs 1-121 as if incorporated herein.

150.   At all times relevant to the action, Defendants were an employer covered by the overtime mandates of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, et seq.

151.   Plaintiff Mancini Bates and the Rule 23 Illinois Class members are employees entitled to the IMWL's protections as employees under this Act.

152.   Plaintiff Mancini Bates was at all times material a member of the Illinois Class and was similarly situated to the members he seeks to represent.

153.   The IMWL entitles employees to compensation for every hour worked in a workweek.

154.   Plaintiff Mancini Bates was promised orally and in writing, including written agreements, offer letters, employee manuals and compensation plans and agreements, that he and all ISR would be classified as non-exempt employees under the state and Federal wage laws, and entitled to be paid premiums for all hours worked more than 40 in each workweek.

155.   The IMWL entitles employees to overtime compensation "not less than time and one-half of the regular rate of pay of the employee for those hours in excess of 40 hours per week." *See* 820 ILCS 105/4a (from Ch. 48, par. 1004a) Sec. 4a. (1)

156.   Defendants violated the IMWL by regularly and repeatedly failing to compensate Plaintiff Mancini Bates and the Rule 23 Illinois Class for all overtime hours worked, meaning all hours worked more than 40 in any work week.  (820 ILCS 105/4a) (from Ch. 48, par. 1004a, Sec. 4a. (1)

157.   The foregoing conduct, as alleged, violates IMWL and any relevant rules adopted by the state of Illinois. At all relevant times, Defendants have been, and continue to be, "employers" within the meaning of the IMWL. At all relevant times, Defendants employed "employee[s]," including each of the members of the Illinois Class, within the meaning of the Illinois Wage Laws.

158.   The Illinois Wage Laws require an employer, such as Defendant, to pay all compensation due to employees on their regular paydays.

159.   At all relevant times, Defendants had a policy and practice of failing and refusing to pay overtime pay to the Illinois Wage Class members for their hours worked in excess of forty hours per workweek.

160.   Defendants violated Illinois Wage Laws including, but not necessarily limited to, **820 ILCS 105/4a (from Ch. 48, par. 1004a), Sec. 4a.,** by failing to pay Plaintiff Mancini Bates and the Illinois Class members overtime premiums for all work performed in excess of forty hours in a workweek and hence, failing to pay all wages accrued to these workers on their regular scheduled paydays.

161.   As a result of Defendants' failure to record, report, credit, and furnish to each member of the Illinois Class their respective wage and hour records showing all wages earned and due for all work performed, Defendants failed to make, keep, preserve, and furnish such records in violation of **820 ILCS § 105/1 et seq**.

162.   Plaintiff Mancini Bates and the Illinois Class seek recovery of attorneys' fees, costs, and expenses of this action to be paid by Defendants.

163.   Plaintiff Mancini Bates and the Illinois Class seek damages in the amount of the respective unpaid wages earned and due at the regular hourly wage rate, and at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek.

164.   As a result, Illinois Class members have and will continue to suffer loss of income and other damages. Accordingly, Mancini Bates and the Rule 23

Illinois Class are entitled to recover unpaid wages owed, including three times the sum as liquidated damages (treble), plus costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

**WHEREFORE,** Plaintiff JEREMY MANCINI BATES and ELAINA HALL, individually, and on behalf of all other similarly situated past and present Inside Sales Representatives (ISR) working from or reporting to the NC and Illinois offices of Defendants, seek Rule 23 class certification and the following relief:

    a. Designate Plaintiff JEREMY BATES MANCINI and ELAINA HALL as Representatives of the single Class of NC and ILL employees, or as class rep of 2 separate classes comprised of Class A) the North Carolina Class and Class B0 the Illinois Class, with the authority to execute any Collective Action or Class Action settlement agreement the parties might reach, subject to the Court's approval before making any such agreement binding;

    b. That the Court find and declare Defendants in willful violation of the overtime compensation sections of the wage laws of Illinois and North Carolina;

c.  That the Court find and declare Defendants' violations of the state overtime laws were and are willful and lacking good faith basis for complying with the state and federal overtime laws;

d.  That the Court enjoin Defendants, under 29 U.S.C. § 217, from withholding future payment of overtime compensation owed to members of the Rule Class or classes;

e.  That the Court award to Plaintiffs Mancini Bates and Hall and the respective class or classes of similarly situated persons, overtime compensation at a rate of one and one half times their regular rates of pay, including the value of all compensation earned, for all previous hours worked in excess of forty (40) for any given week during the past three years, liquidated damages, of an equal amount of the overtime compensation, plus treble damages for the Illinois Class members, in addition to all penalties and interest on said award;

f.  That the Court award Plaintiffs JEREMY MANCINI BATES and ELAINA HALL and all class members  recovery of their reasonable attorneys' fees and costs as per N.C.G.S. §§ 95-25.1, et seq; and the IMWL;

g.  For an Order designating and certifying a single  Class, or the two classes comprising the Illinois Class and the North Carolina Class as similarly situated so as to proceed as individual Class Actions pursuant to Fed. R. Civ. P. Rule 23;

h.  For an Order appointing Plaintiff's counsel, Mitchell Feldman and Feldman Legal Group as Class Counsel for the Rule 23 Class or classes certi-fied;

i.  That the Court finds Defendants willfully, and with a lack of good faith, violated the overtime provisions of the North Carolina overtime wage law, the Illinois Wage laws, including the time tracking requirements for non-exempt employees;

j.  That the Court apply a three (3) year statute of limitations to the violations of the North Carolina Class and Illinois Class;

k.  That the Court enjoin Defendant, pursuant to 29 U.S.C. § 217, from withholding future payment of overtime compensation owed to members of the Putative Classes of similarly situated;

l.  An order declaring Defendants as Joint Employers of the Plaintiff and class members, and hold them jointly and severally liable for all damages awarded,

m. That the Court award any other legal and equitable relief as this

Court may deem fair, just or appropriate.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

demands a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted this 14th day of November 2021


*/s/Mitchell L. Feldman*
**Mitchell L. Feldman, Esq**
GA Bar No. 257791
FELDMAN LEGAL GROUP
1201 Peachtree Street NE
Second Floor
Atlanta, Georgia 30361
Tele: (813) 639-9366
Fax: (813) 639-9376
mfeldman@flandgatrialattorneys.com
Secondary: mail@feldmanlegal.us
*Attorney for Plaintiffs and the classes of*
*similarly situated*