**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

KHIRY MULLINS and
ADRIAN DIAZ, Individually
and on behalf of all
others similarly situated,

      Plaintiffs,

                                   Case No: 1:21-cv-4697-MLB
      v.                                CLASS ACTION

VERIZON CONNECT FLEET USA LLC
and VERIZON CONNECT INC.

      Defendants.

_____.

**JOINT MOTION AND MEMORANDUM OF LAW FOR FINAL APPROVAL**
**OF CLASS SETTLEMENT AND APPROVAL OF ATTORNEY'S FEES**

On September 19, 2023, this Court entered an Order Granting Preliminary Approval of Class Action Settlement, Authorizing Notice of Proposed Settlement, and Notice of Final Approval Hearing. (D.E. 31) (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Settlement Class Representatives Plaintiffs Khiry Mullins and Adrian Diaz (the "Named Plaintiffs") and Defendants VERIZON CONNECT FLEET USA LLC and VERIZON CONNECT INC. ("Defendants" and collectively with Named Plaintiffs, "Parties") hereby submit their Motion and Memorandum of Law for Final Approval of Class Settlement and Approval of Attorney's Fees, and request that this Court enter an

1

award of attorneys' fees, costs pursuant to the Settlement Agreement and Release of Claims (the "Settlement Agreement") **Exhibit 1**.

## I.    INTRODUCTION

On November 14, 2021, former Plaintiffs Jeremy Mancini Bates and Elaina Hall filed a Class Action Complaint against Defendants for unpaid overtime wages pursuant to North Carolina and Illinois state laws. DE 1. With the filing of the Second Amended Complaint on March 17, 2023, the Named Plaintiffs and Class Representatives were substituted. DE 24.  Khiry Mullins substituted for Elaina Hall as the Class Representative for the North Carolina Class and Adrian Diaz substituted for Jeremy Mancini Bates as the Class Representative of the Illinois Class. The Second Amended Class Action Complaint ("Complaint") contains two counts[1] (II and III) against Defendants for violation of the overtime wage requirements of North Carolina and Illinois state laws brought by Mullins and Diaz individually, and on behalf of all those similarly situated.

Following extensive document and data productions, a full-day mediation, and additional negotiations, the Parties reached a settlement of the underlying claims on a class action basis.

Subject to final court approval, Class Counsel have secured a settlement of Plaintiffs' claims on a class-wide basis for significant monetary relief in the

---

[1] The Plaintiffs voluntarily withdrew Count I to the extent it mistakenly referred to a record - keeping violation under the Fair Labor Standards Act as opposed to state law.

Maximum Gross Settlement fund of one Million Fifty Thousand dollars ($1,050,000.00), inclusive of Class Counsel's approved attorneys' fees and costs and the costs of settlement administration (the "Gross Settlement Fund"). The proposed settlement satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure. By the instant Motion, Named Plaintiffs now seek final approval of settlement, and approval of Class Counsel's attorney's fees and costs in the amount of 25% of the Gross Settlement Fund.

On September 19, 2023, the Court took the first step in the settlement approval process when it granted preliminary approval of the settlement and directed that notice be mailed to class members. (DE 31). On November 8, 2023, the appointed settlement administrator mailed settlement notice packets to the 296 Class Members, which included the approved notice advising Class Members of the terms of the settlement and their right to opt-out of or object to the settlement. As of the date of this filing, no class members have objected to the settlement or excluded themselves. Conversely, 95 individuals have filed claim forms to participate in the settlement and claim their wages. Respectfully, with such overwhelming support, and for the reasons stated below, the Court should grant Final Approval of the Settlement and award Class Counsel's attorney's fees and costs in the amount of 25% of the Gross Settlement Fund.

## II.    <u>FACTUAL BACKGROUND</u>

The Plaintiffs' claims in the Complaint stem from the same operative facts and allegations that Defendants willfully violated the North Carolina and Illinois state wage laws by failing to pay the Plaintiffs and all other putative class members all overtime compensation due to them. As described in the Complaint, the allegations are similar to and related to the FLSA collective action case of *Garnick et al v. Verizon Connect Fleet USA LLC*, 8:20-cv-01474, MDFL (the "Garnick Lawsuit").

The Plaintiffs are former employees of Verizon Connect who held the titles of Business Development Representative (BDR) or Sales Partners (aka Closers). The Plaintiffs allege they were discouraged from reporting more than 40 hours in every workweek and thus worked unpaid hours off the clock. Specifically, Plaintiffs allege that Defendants required them, and the putative class members, to work a 45-hour weekly schedule, with the opportunity to take a 1 hour meal break, but regardless of whether they actually took the full meal break, were to self-report no more than 8 hours per day. Further, the Plaintiffs allege that pursuant to a de facto policy, they were permitted to work overtime hours as long as they did not self-report and claim all hours worked, and that they routinely did so and thus were not properly compensated for all overtime hours worked in every work week in violation of North Carolina and Illinois state wage laws.

Defendants disputed the Plaintiffs' claims and maintained that it properly compensated employees for all hours worked. Defendants specifically deny knowledge of the Plaintiffs or other employees working off the clock overtime hours without pay. Defendants also deny that it maintained a de facto policy that undermined its lawful written pay policies.

The Complaint is a Rule 23 class action on behalf of the Plaintiffs and putative class members, including one count for violations of Illinois state wage laws and one count for violation of North Carolina state wage laws, and seeks Rule 23 class action certification on behalf of current and former employees of Verizon Connect similarly situated to Plaintiffs Mullins and Diaz who worked from Defendants' office locations in Illinois or North Carolina, and who did not opt in and join the *Garnick* Lawsuit.

On January 14, 2022, the Parties here engaged in a full day mediation in this case and the related *Garnick* Lawsuit. Preceding the mediation, the Parties had litigated the *Garnick* Lawsuit since June 29, 2020, and Verizon Connect had produced substantial ESI, including payroll and time records, and separately produced other records of the work activities, including email and time-stamped CRM, badge swipe, and phone log data, for a subset of the opt-in plaintiffs in the *Garnick* Lawsuit, and the original Plaintiffs in this case (Bates and Hall).

Defendants also produced workweek information for all putative class members at that time for purposes of determining whether a resolution could be reached.

In preparation for the mediation before Mediator Kay Wolf, Esq., the Parties analyzed time and payroll records, along with the multiple sources of time-stamped data produced by Defendants. Class Counsel also presented Defendants with declarations of a large number of the opt-in plaintiffs in the *Garnick* Lawsuit, which contained statements of the estimated overtime hours they claimed to have worked without compensation. The Parties discussed on numerous occasions their respective views of the ESI produced and Defendants' claimed legal defenses. Prior to the mediation, Class Counsel presented Defendants with a working Excel spreadsheet damages model. Although the mediation did not result in a settlement, the Parties thereafter continued to negotiate at arm's length over the next several weeks. On February 4, 2022, the Parties reached an agreement in principle to settle this lawsuit and the *Garnick* Lawsuit and reduced the material terms into a jointly executed term sheet.

Eventually, an agreement was memorialized in the enclosed Settlement Agreement executed by the Plaintiffs on April 14, 2023.[2] The Settlement Agreement resolves the claims of all current and former employees of Defendants who did not file opt-in consent forms in the *Garnick* Lawsuit but who work or

---

[2] The Settlement Agreement was executed by the original Class Representatives (Bates and Hall) in April 2022, and executed by the current Class Representatives upon their substitution.

worked as non-exempt Business Development Representatives and/or Sales Partners at Defendants' office locations in Illinois or North Carolina at any time from November 14, 2018 through the date of the Preliminary Approval (the "State Law Classes"). Based on their own independent investigation and evaluation, Class Counsel are of the opinion that settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate and is in the best interest of the State Law Classes in light of all known facts and circumstances, including the risk of significant delay, the risk the State Law Classes will not be certified by the Court, and the defenses asserted by Defendants.

The Parties agree that the State Law Class or Classes described herein should be certified pursuant to Rule 23 for settlement purposes only, and the same is herein requested in the motion for approval. If this Settlement is not approved, the certification should have no force and effect and will be revoked. The Parties further agree that certification for the purposes of the settlement is in no way an admission that class certification is proper under the more stringent standard applied for litigation and that evidence of this limited stipulation for settlement purposes only will not be admissible for any purpose in this or any other proceeding. The terms and conditions of this Settlement are set forth in the Settlement Agreement, attached hereto as EXHIBIT 1 (the "Settlement Agreement").

### III.    <u>SETTLEMENT TERMS</u>

The Parties have agreed to monetarily resolve the litigation for a Maximum Gross Settlement fund of $1,050,000.00. The Maximum Gross Settlement fund is based on the Parties' estimation of potential damages for each of the settlement class members for the applicable eligible periods, as defined below. The Parties submitted the Settlement Agreement to the Court, and on September 19, 2023, this Court issued the Preliminary Approval Order.

The Illinois Class is defined as all current and former employees of Defendants who did not file opt-in consent forms in the *Garnick* Lawsuit but who work or worked as non-exempt Business Development Representatives and/or Sales Partners for Defendants' office location in Illinois at any time from November 14, 2018 through the date of the Preliminary Approval Order.

The North Carolina Class is defined as all current and former employees of Defendants who did not file opt-in consent forms in the *Garnick* Lawsuit and who work or worked as non-exempt Business Development Representatives and/or Sales Partners for Defendants' office location in North Carolina at any time from November 14, 2018, through the date of the Preliminary Approval Order.

Individuals who submitted a timely claim form and did not opt-out, i.e., Participating Class Members will be entitled to a pro rata share from the net settlement amount based upon their W-2 earnings and workweeks in the relevant

period pursuant to the formula in the Settlement Agreement. Participating Class Members and those who do not opt-out (which includes all Class Members as no Class Member submitted an opt-out form) will be bound by the terms of the Settlement Agreement and, as stated more fully therein, will release all overtime and pay-related claims asserted, or that could have been asserted in the litigation, under federal, state, or local law, through the date of final approval of the Settlement Agreement by the Court. Class Counsel seeks Court approval of an award of attorneys' fees in the amount of 25% ($262,500) of the Maximum Gross Settlement fund for attorney's fees incurred in the prosecution of the lawsuit and finalization of the settlement. Further, the Parties seek approval of Rust Consulting as their jointly selected Settlement Administrator as well as a not-to-exceed cap of $15,000 for the cost of settlement administration

Under the terms of the Settlement Agreement and the Preliminary Approval Order, Court-Authorized Notice was issued to 296 Settlement Class Members. As of the date of this motion, 96 Settlement Class Members have submitted their claims for their portions of the Maximum Gross Settlement fund.[3] There are no Settlement Class Members who have submitted an objection to the settlement. Finally, there is not a single Settlement Class Member who opted-out of the settlement.

---

[3] Defendants also agreed to (1) accept an additional claims form timely dated but not post-marked until after the deadline set by the Settlement Agreement and (2) allow a Class Member additional time to correct a claim deficiency. Accordingly, the Parties estimate the number to rise to 98.

In light of the overwhelming support from Settlement Class Members who filed their claims (and the lack of opposition thereto), the Parties now request that the Court approve the settlement as fair, reasonable and adequate pursuant to the terms of the Settlement Agreement, and the Preliminary Approval Order.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The District Court is charged with approving any settlement agreement in a class action. Fed. R. Civ. P. 23(e). The court may approve the settlement "only after a hearing and on a finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." *Id.*

The Eleventh Circuit has identified the following factors as relevant to review of whether a class settlement's terms are fair, reasonable and adequate: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).

The proposed Settlement Agreement is fair, adequate and reasonable, and treats Settlement Class Members equitably relative to each other, given the costs, risks, and probability of success, if the current complex litigation were to continue.

### 1. Likelihood of Success at Trial

"Plaintiffs' likelihood of success at trial is not only the first Bennett factor, it is also by far the most important factor in evaluating a class action settlement." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007) (quotation and citation omitted); *accord Knight v. Alabama*, 469 F. Supp. 2d 1016, 1032-33 (N.D. Ala. 2006) ("The likelihood of success at trial is by far the most important factor when evaluating a settlement."). "The likelihood of success at trial is weighed against the amount and form of relief contained in the settlement." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005). "The Court, however, has neither the duty nor the right to reach any ultimate conclusions on the issues of fact or law which underlie the merits of the dispute . . . In fact, absent fraud, collusion or the like, the Court should be hesitant to substitute its own judgment for that of experienced counsel representing the class." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citations omitted).

With respect to this first factor, Plaintiffs' likelihood of success at trial was unclear. The disputed questions of law and fact in this case were complex, and Plaintiffs could not be certain to prevail on the issue of class certification or liability.  Among other things, Defendants deny that they engaged in any unlawful or improper conduct, including, expressly all off-the-clock work claims of

Plaintiffs, and denies all liability and damages of any kind owed to the Plaintiffs and Class Members in this action. If class certification were to be denied, Plaintiffs would have to proceed in their individual actions, which carry risks of paying costs and incurring loss of time from work and other consequences. Moreover, if a class was certified, Defendants asserted factual and legal arguments that any damages (assuming liability could be established) would be limited.

In light of these disputed questions of fact and law, it is clear that both Parties faced significant risks if this case were to proceed forward into full-blown, costly, protracted discovery and motion practice as to class certification and merits issues. Similarly, if the case were to proceed to trial, the uncertainties of whether a jury would award a greater sum or less (or even zero) weigh in favor of approving the settlement and declaring it fair and reasonable.

2. **Range of Possible Recovery and Point in Range of Possible Recovery Where Settlement is Fair, Adequate, and Reasonable**

The next two *Bennett* factors—the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable—are typically considered together. *See, e.g.*, *Lipuma*, 406 F. Supp. 2d at 1322; *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma*, 406 F. Supp. 2d at 1323. "[T]he fact

that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens*, 118 F.R.D. at 542.

The settlement terms regarding class member recovery were based on careful ESI analysis and complex damaging modeling by both Parties. Accordingly, the settlement terms represent an accurate accounting of the Class Members' range of recovery after more than 18 months of litigation in the related *Garnick* Lawsuit, including months of negotiations and complex analysis and calculations. First, the Parties reviewed and assessed the number of overtime hours reported and paid across the Opt-in Plaintiffs in the *Garnick* Lawsuit. On this point, the Parties recognize that the overtime wage laws provide that if Defendants can prove they had no knowledge of the off the clock work, it could prevail on some or all of the wage claims. Second, the Parties reviewed the declarations of opt-in plaintiffs in the *Garnick* Lawsuit claiming hours of unpaid overtime hours worked. Third, the Parties analyzed extensive ESI data (such as phone logs and time stamp data from CRM programs and other activity logs) with respect to the unpaid work hours claims. Class Counsel performed numerous complex damages modeling based upon best and worst case scenarios. Although some Plaintiffs in the *Garnick* Lawsuit reported working significant unpaid overtime hours, upwards of 9 hours per week during their terms of employment, Defendants contended that

their analysis of the available electronically stored information, and the records demonstrating the amount of overtime paid, strongly disputed their claims.

Based upon their respective analyses and investigations, the Parties highly disputed the estimated unpaid overtime hours worked off the clock and the existence of a de facto policy under which Class Members were allegedly discouraged from reporting overtime hours that were known by Defendants to have been worked. In addition, Defendants presented additional legal arguments for limiting recovery by the Class Members, including contending that certain of the overtime hours constituted de minimis activity. *See Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984). This defense could have precluded counting work lasting less than ten minutes or occurring while the class member was primarily engaged in personal pursuits towards the 40-hour-per-week threshold for overtime pay.

While Plaintiffs disagree with Defendants' factual and legal arguments, they nonetheless recognize that these defenses present substantial litigation risk including a risk of zero recovery after costly and protracted litigation upwards of two years or more, and more years with potential appeals as often follow class action cases. Indeed, if Defendants succeeded on their defense theories, a total recovery well below the settlement amount was possible even if Plaintiffs prevailed on the liability and class certification issues, and survived Defendants' anticipated

Motion for Summary Judgment. Due to the wide range of possible recovery, based on both a thorough review of the relevant data and on the legal grounds Defendants advanced for limiting damages even further, Class Counsel's opinion is that a recovery well below the ultimate settlement amount was a possible outcome here. Further, the Class Members here are persons who did not file opt-in consent forms in the *Garnick* Lawsuit, yet would now receive compensation as part of this settlement based upon the discovery and contested issues in that case.

Taking all these facts into consideration, the settlement achieved is within the range of fair and reasonable outcomes given the overall range of possible recoveries and the strength of Plaintiffs' claims. Moreover, as per the formula in the Settlement Agreement, each Class Member's pro-rata share is calculated based upon their own W-2 earnings as compared to the settlement or common fund for the State Law Classes, making it equitable for all. Those who worked harder and earned more in bonus or commission have higher overtime rates, as are those employees who worked for the company longer and had higher base rates of pay. Further, those who had more eligible net workweeks within the 3 year class period receive a higher pro rata share based upon their W-2 earnings.

According to Class Counsel's comprehensive damage model, Class Counsel estimates that this Maximum Gross Settlement fund provides for the recovery of 2 hours of overtime hours per class member, across a maximum three-year period,

for all eligible net workweeks, meaning those in which the employee clocked and worked upwards of 38 or more hours per week. The range of individual net settlement payouts under the formulas reach the level of thousands of dollars for many of the class. For a class of approximately 296 persons at issue in this case, this is extraordinary in results and is certainly fair and reasonable, with the top individual class member having an individual gross settlement share estimated at $9,500.00 for unpaid overtime wages (before deduction of 25% attorney's fees if approved and pro rata share of associated costs and costs of administration). The above factors therefore weigh heavily in favor of approving the settlement as it is an excellent result here. This factor therefore weighs in favor of approving the settlement.

### 3.  The Complexity, Expense and Duration of Litigation

With respect to the complexity, expense, and duration of litigation, "[t]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp. 2d at 1323. "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Behrens*, 118 F.R.D. at 543.

16

This Rule 23 class action is both factually and legally complex. Proceeding with full-blown discovery, motion practice, and trial (assuming the Plaintiffs could prevail on their motion for class certification) would be significantly complex and very expensive. Written discovery, depositions, and motion practice would consume substantial effort and resources even prior to a trial. Accordingly, this factor weighs in favor of approving the settlement.

### 4. The Stage of Proceedings at Which Settlement Was Achieved

The sixth factor, the stage of the proceedings at which settlement was achieved, also weighs in favor of preliminary approval. To evaluate this factor, the court looks to whether Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation. *Lipuma*, 406 F. Supp. 2d at 1324; *Behrens*, 118 F.R.D. at 544. Early settlement is favored, and full-blown discovery is not necessary. *See, e.g.*, *Lipuma*, 406 F. Supp. 2d at 1324.

Here, the proposed settlement was achieved early in the litigation and prior to any formal discovery, but with the benefits of 18+ months of litigation in the related *Garnick* Lawsuit. Resolution of the case at this stage permits the Parties to reach a fair resolution of this action, but without the time-consuming, uncertain, and expensive litigation through a protracted discovery process.

For all of the foregoing reasons, the settlement is fair, reasonable, and adequate, and should be finally approved by this Court.

## V.    ATTORNEYS' FEES AND COSTS

At the Hearing on the Preliminary Motion To Approve the Settlement on September 19, 2023, the Court inquired as to Class Counsel's lodestar and sought to make a determination on the fee award as part of the approval of the settlement. After hearing from Class Counsel and counsel for the Defendants, the Court announced the entire settlement, including the 25% common fund fee request by Class Counsel was all approved. The Court indicated it was within its discretion to decide the fee at that time rather than later on upon the final motion to approve.

All Class members were given notice of the settlement including Class Counsel's fee of 25%, and no class member has objected to this fee. Thus, since the fee award was already granted, the only question remaining was whether any class member had objected to the fee.  Seeing none, the attorney's fee request is due to be granted.

Class Counsel, for the sake of completeness, requests final approval of the same fee award as contemplated by the Settlement Agreement, of 25% of the Maximum Gross Settlement fund.  This equates to ($262,500), an amount that will include their reasonable litigation costs. *see* Fed. R. Civ. P. 23(h) & 54(d)(2). By agreement and representation to the Court, Defendant did not oppose Class Counsel's

requested fee, nor refute the same at the hearing on September 19, 2023. *See* **Exhibit 1** -Settlement Agreement.

Class Counsel incorporates by Reference the case law and authority as per ***Plaintiff's Notice To the Court of Filing Legal Authority***, DE 29, filed with the Court on September 18, 2023 and as stated in the parties ***Brief in Support of Plaintiffs' Unopposed Motion For Preliminary Approval of Class Action Settlement***, DE 27-1.

Including the time for attending the prior hearing, Class Counsel continued to dedicate time and resources in this action and the recovery of the settlement, including counseling clients and class members, and overseeing and participating in the notice process and necessary forms.  Class counsel also had to oversee the settlement allocations.  This additional time amounts to additional lodestar fees of $19,073.20 as of this date. Thus, the total Lodestar fees of Class counsel is $177,781.20. See Declaration of Mitchell Feldman, Exhibit 3.

## VI.    CONCLUSION

For the foregoing reasons, the Parties respectfully requests that this Court enter the Final Order Approving the Class Action Settlement, attached as **Exhibit 2** hereto, which, *inter alia*:

i.    finally certifies the instant proceeding as a class action pursuant to Federal Rule of Civil Procedure 23 for purposes of settlement only;

ii.    approves the Parties' settlement as fair, reasonable and adequate as it applies to the State Law Classes;

iii.   dismisses with prejudice this action, and the claims of the Class Representatives, and all Class Members who did not timely opt out, under North Carolina and Illinois state laws as asserted in the Class Action Complaint;

iv.    binds all Class Representatives, and Class Members who did not timely opt out, to the terms of the Settlement Agreement, including the release of claims set forth therein, through the date of final approval of the Settlement Agreement, and permanently bars and enjoins all Class Representatives and Class Members who did not timely opt out from filing or prosecuting against Defendants any claims according to the release set forth in the Settlement Agreement;

v.     forever discharges Defendants from any and all released claims;

vi.    awards Class Counsel attorneys' fees and costs in the amount of $262,500; and

vii.   enters final judgment in accordance with the terms of the Settlement Agreement.

Respectfully submitted this 10th day of January, 2024.

*/s/ Mitchell L. Feldman*
Mitchell L. Feldman
FELDMAN LEGAL GROUP
Georgia Bar No.: 257791
E-mail: mlf@feldmanlegal.us
6916 W. Linebaugh Avenue, #101
Tampa, Florida 33626
Tel: (877) 946-8293
Fax: (813) 639-9376
Attorney for Plaintiffs and
the classes

/s/ *Elaine R. Walsh*
Elaine R. Walsh
Ga. Bar No. 003480
JONES DAY
1221 Peachtree Street, N.E.
Suite 400
Atlanta, GA 30361
Telephone: (404) 521-3939
Facsimile: (404) 581-8330

Tonya B. Braun
(admitted pro hac vice)
JONES DAY
325 John H. McConnell Boulevard
Suite 600
Columbus, OH 43215-2673
Telephone: (614) 469-3939
Facsimile: (614) 461-4198
Attorneys for Defendants

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that this document was prepared using 14-point Times New Roman font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed and served via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or Parties of record and also via any additional manner noted below.

*/s/ Mitchell L. Feldman*
MITCHELL L. FELDMAN
Georgia Bar No.: 257791
